IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MATTHEW DICKSON, on behalf of himself and others similarly situated, | : : : | Case No. 5:18-cv-182 |
| Plaintiff, | : : | |
| | : | JURY DEMANDED |
| v. | : : | |
| DIRECT ENERGY, LP, TOTAL MARKETING CONCEPTS, LLC, and SILVERMAN ENTERPRISES, LLC | : : : : | |
| Defendants. | | |

## SECOND AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Matthew Dickson ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Direct Energy, LP ("Direct Energy") hired Total Marketing Concepts, LLC ("Total Marketing"), who used its vendor Silverman Enterprises, LLC ("Silverman"), to send prerecorded telemarketing calls to Plaintiff's cellular telephone number. Direct Energy hired Total Marketing Concepts to originate new customers and is vicariously liable for their illegal telemarketing conduct.

3. Plaintiff never consented to receive these calls, and they were placed to him for telemarketing purposes in an attempt to generate new business for Direct Energy.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## Parties

5. Plaintiff Matthew Dickson is a resident of the state of Ohio and this District.

6. Defendant Direct Energy is headquartered in Houston, Texas. Defendant Direct Energy is engaged in substantial and not isolated business activities in the State of Ohio and the United States, including, but not limited to, hiring vendors and directing them to solicit customers in Ohio, and then entering into contractual relationships and servicing the relationships with new customers that result from those telemarketing calls.

7. Defendant Total Marketing Concepts, LLC is headquartered in Florida. Defendant Total Marketing is engaged in substantial and not isolated business activities in the State of Ohio and the United States, including, but not limited to, ordering pre-recorded calls into the State of Ohio for the purpose of generating new customers for Direct Energy.

8. Defendant Silverman Enterprises, LLC is a Delaware limited liability company that is headquartered in Michigan. Defendant Silverman is engaged in substantial and not isolated business activities in the State of Ohio and the United States, including, but not limited to, making pre-recorded calls into the State of Ohio for the purpose of generating new customers for Direct Energy.

## Jurisdiction & Venue

9. The Court has federal question jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff is a resident of this district and he received the illegal telemarketing calls that are the subject of this putative class action lawsuit in this district.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a

3

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

16. Defendant Direct Energy is a provider of energy services.

17. To generate new clients, Direct Energy relies on telemarketing.

18. One of the telemarketing strategies used by Direct Energy involves the use of prerecorded messages to solicit potential customers.

19. However, even though the calling parties only identify "Direct Energy" as the company contacting call recipients, Direct Energy doesn't make these calls themselves.

4

20. Instead, Direct Energy compensated third parties, like the co-defendant Total Marketing, who uses vendors like Silverman to physically dial the calls.

21. Direct Energy only pays Total Marketing when they, and Total Marketing's vendors, generate new customers.

Calls to Mr. Dickson

22. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23. Plaintiff is the user of a cellular telephone number (440) 409-XXXX.

24. After being hired by Direct Energy to generate new customers, which it does through outbound telemarketing using pre-recorded messages with its vendors, Total Marketing caused multiple prerecorded message calls to be sent to Plaintiff's cellular telephone number in 2017, including on September 19, November 3, December 1 and 21.

25. The prerecorded message claimed that the Plaintiff should call a telephone number back regarding their energy services.

26. A call back to this telephone number has resulted in representatives identifying themselves as being "with Direct Energy."

27. The November 3, 2017 prerecorded message explicitly stated that the caller was "Nancy Brown with Direct Energy."

28. Plaintiff was not interested in changing energy providers, has never done business with the Defendants, and had not provided his written consent to receive the calls.

29. In fact, prior to this lawsuit, the Plaintiff wrote to Direct Energy on November 13, 2017 asking for any evidence of their consent to call him, which he asserted did not exist.

5

30. Not only did Direct Energy fail to provide any evidence of consent, or even respond, they placed two more calls to the Plaintiff after his letter was sent, as detailed above.

31. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

32. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the proposed classes.

### Direct Energy's Liability for the Telemarketing Calls

33. Direct Energy is a "person," as defined by 47 U.S.C. § 153(39).

34. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

35. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

36. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

37. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Direct Energy may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside

6

>the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

38. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

39. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

40. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

>[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

41. Direct Energy is legally responsible for ensuring that Total Marketing complied with the TCPA, even if Direct Energy did not itself make the calls.

42. Direct Energy knowingly and actively accepted business that originated through the illegal telemarketing calls from Total Marketing.

43. In fact, Direct Energy accepted the business from illegal calls from the defendants, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

44. Despite these facts, Direct Energy has continued to fail to adequately monitor the third parties operating on their behalf.

45. By hiring a company to make calls on its behalf, Direct Energy "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

46. Moreover, Direct Energy maintained interim control over the actions of the party that made the call.

47. For example, Direct Energy had absolute control over whether, and under what circumstances, it would accept a customer.

48. Furthermore, Direct Energy had day-to-day control over the party that made the call's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Direct Energy.

49. Additionally, Direct Energy restricted the geographic location that the company that made the calls could promote Direct Energy.

50. Direct Energy also gave interim instructions to the company that made the calls by providing the volume of calling and leads it would purchase.

8

51. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

52. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

53. The class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States: (a) to whom Defendants and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

54. Excluded from the class are Defendants, and any entities in which Defendants has a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

55. The class as defined above is identifiable through phone records and phone number databases.

56. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

57. Plaintiff is a member of the proposed class.

58. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using a prerecorded message to call cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior consent for the calls; and

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

59. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the class, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

60. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

61. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

62. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for

small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

63. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

64. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling Provisions

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using a prerecorded message, or by the fact that others did so on their behalf.

67. As a result of Defendants' violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using a prerecorded voice in the future.

69. Defendants' violations were negligent and/or knowing.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A.  Certification of the proposed class;

B.  Appointment of Plaintiff as representative of the class;

C.  Appointment of the undersigned counsel as counsel for the class;

D.  A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.  An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.  An award to Plaintiff and the class of damages, as allowed by law;

G.  Leave to amend this Complaint to conform to the evidence presented at trial; and

H.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215

       (614) 488-0400
       (614) 488-0401 facsimile
       murphy@mmmb.com
       misny@mmmb.com

       Matthew P. McCue
       The Law Office of Matthew P. McCue
       1 South Avenue, Suite 3
       Natick, Massachusetts 01760
       (508) 655-1415
       mmccue@massattorneys.net
       *Subject to Pro Hac Vice*

       Samuel J. Strauss
       Turke & Strauss LLP
       936 N. 34th Street, Suite 300
       Seattle, WA 98103
       (608) 237-1774
       sam@turkestrauss.com
       *Subject to Pro Hac Vice*

## CERTIFICATE OF SERVICE

 I, hereby certify that on July 3, 2018, I served the foregoing through the Court's CM/ECF system, which sent notice to all counsel of record.

       /s/ *Anthony I. Paronich*
       Anthony Paronich
       BRODERICK & PARONICH, P.C.