# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| MATTHEW DICKSON, on behalf of himself and others similarly situated,  §§§ | |
| Plaintiff, § | |
| v. § | C.A. NO. 5:18-cv-182 |
| § | |
| DIRECT ENERGY, LP, TOTAL MARKETING CONCEPTS, LLC, and SILVERMAN ENTERPRISES, LLC §§§§ | |
| Defendants. § | |

**DECLARATION OF JOHN MORAN IN SUPPORT OF DIRECT ENERGY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, John Moran, under penalty of perjury, declare as follows:

1. I am an employee of Direct Energy, LP ("Direct Energy"). My position at Direct Energy currently is Head of Telesales. During the relevant time period I was the Telesales Vendor Manager with responsibility for managing outbound telemarketing campaigns for Direct Energy North America, including those conducted by Total Marketing Concepts ("TMC"). Therefore, I have personal knowledge of the Ringless Voicemail ("RVM") Campaign that TMC performed, Direct Energy's contracts with TMC, my communications with TMC, and all other facts stated herein.

2. Direct Energy contracts with various third-party telemarketing vendors that hold themselves out as experts in telemarketing and telemarketing legal compliance.

3. TMC is one such former independent contractor.

4. Direct Energy retained TMC as an independent contractor to perform various telemarketing operations pursuant to its Teleservices Agreement and accompanying Statements of Work. Attached to this declaration are true and correct copies of the Teleservices Agreement (Ex.

1

1-A), Statement of Work (Outbound Teleservices) (Ex. 1-B), Statement of Work # 1 (Outbound Teleservices) (Ex. 1-C), and Statement of Work (Opt-In Leads) (Ex. 1-D).

5. Under the Statement of Work for Opt-In Leads (Ex. 1-D), Direct Energy required TMC to procure TrustedFrom certificates. Direct Energy authorized and required TMC to obtain TCPA compliant opt-ins from DMI and TrustedForm Certificates from Active Prospect. TrustedForm Certificates record key information relating to an opt-in including timestamps, data entry, IP addresses, and mouse movement and clicks. It was important to Direct Energy for each opt-in to be accompanied by a TrustedForm Certificate to remove any uncertainty about whether the called party opted-in. Direct Energy paid a premium for leads who had provided opt-in consent, $0.45 per lead. In the telemarketing industry, leads sold without opt-in consent are available for a fraction of the cost, frequently as little as $.05.

6. Direct Energy never permitted TMC or any vendor to procure non-TCPA complaint opt-ins.

7. TMC touted its ability to use Ringless Voicemail ("RVM") technology to effectively reach potential customers. TMC approached Direct Energy about conducting an RVM campaign to supplement its traditional outbound telemarketing. After reviewing TMC's proposal, Direct Energy authorized TMC to conduct a limited RVM campaign to individuals who opted-in to receive information regarding Direct Energy services.

8. Direct Energy repeatedly reaffirmed to TMC that it could only contact opt-in leads who provided prior express written consent. For example, on April 4, 2017, I forwarded emails to Larry Correia with TMC expressly stating that Direct Energy would not agree to "deliver a prerecorded message unless [it] has obtained the call recipient's prior signed, written agreement to receive such calls" and that "express permission from the customer" was required. Ex. 1-E at

2

Direct Energy 003139-003140. Similarly, on May 15, 2017, I emailed numerous TMC employees that: "We've been given the green light to go forward with the ringless voice message to opt lead leads only." Ex. 1-F , at Direct Energy 003493 (emphasis added). On August 2, 2017, I again reaffirmed to numerous TMC employees that "I [had] greenlighted [TMC] to expand Opt in as high [and] as far as [it] can go." Ex. 1-G,  at Direct Energy 004295. Finally, on August 16, 2017, I forwarded an email reiterating Direct Energy's position that "that we only use ringless voicemail for potential customers who have provided consent to receive calls." Ex. 1-H, at Direct Energy 009085, 009087. True and correct copies of the emails are attached hereto as Exhibits 1-E-H.

9. For the RVM campaign, Direct Energy only authorized TMC to procure opt-ins from DMI. It did not authorize Silverman or any other opt-in provider to provide opt-ins for the RVM campaign. In fact, the March 2017 Statement of Work Addendum, a true and correct copy of which is attached as Ex. 1-I, expressly stated that Silverman's role was limited to "leav[ing] approved messages on customer's voicemail" "via RVM technology[.]"

10. The price of opt-ins leads did not drop because of a change of lead vendors from DMI to Silverman. I  did not discuss switching opt-in lead vendors from DMI to Silverman in 2017. In fact, Silverman was not approved as an opt-in lead provider until March 2018, as shown in the attached true and correct copy of the March 25, 2018, Teleservices Statement of Work No. 3 (Ex. 1-J).

11. I have never discussed Just Deliver It, LLC ("JDI") or Magnify Telecom, LLC ("Magnify") with TMC and/or Silverman, and Direct Energy never authorized or approved them as vendors for any service. Direct Energy was not aware that TMC was using anyone other than

3

Silverman to send RVMs as required by the March 2017 Statement of Work Addendum. *See* Ex. 1-I. In fact, Direct Energy did not learn of JDI's or Magnify's existence until after suit was filed.

12. Direct Energy paid TMC $527,133.60, including a surcharge for TrustedForm certificates, for opt-in leads from April 2017 through November 2017, believing the opt-ins were legitimate. True and correct copies of the invoices are attached to this declaration as Exhibit 1-K.

13. Direct Energy routinely reviewed TMC telemarketing calls for compliance purposes, including after David Schotz asked me to inspect TMC to ensure that they were providing true opt-ins as shown in the email attached as Exhibit 7 to Plaintiff's Motion for Class Certification. To be clear, Mr. Schotz's request was not driven by concerns about TMC's opt-ins, or anything about TMC in particular. Our purpose was to ensure standard telesales practices were being followed such as following approved scripts, explaining things clearly to customers, and ensuring that the sales go smoothly.

14. The RVM campaign lasted from May 2017 through November 2017. By late November 2017, I spoke with Larry Correia at TMC and directed TMC to stop all RVM telemarketing. Mr. Correia responded that TMC would cease all RVM-related telemarketing. A couple of weeks later, Mr. Correia confirmed to me that TMC had, in fact, stopped all RVM-related telemarketing. Since November 2017, Direct Energy has not authorized the recommencement of the RVM campaign or any new RVM campaign.

15. Direct Energy terminated all agreements with TMC in July 2019.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2020.

_____
John Moran

4