IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MATTHEW DICKSON, on behalf of himself and others similarly situated, § § § | |
| Plaintiff, § | |
| v. § | C.A. NO. 5:18-cv-182 |
| § | |
| DIRECT ENERGY, LP, TOTAL MARKETING CONCEPTS, LLC, and SILVERMAN ENTERPRISES, LLC § § § § | |
| Defendants. § | |

**DIRECT ENERGY'S MOTION TO DISMISS FOR LACK OF STANDING
AND MEMORANDUM OF LAW IN SUPPORT**

Federal courts are reserved for civil litigants with an actual case or controversy arising from a concrete and particularized injury in fact. Plaintiff Matthew Dickson is not one of those litigants. Mr. Dickson's suit is based on a single voicemail he received that did not ring his phone (a "ringless voicemail or "RVM"), that he has no recollection of receiving, that he admits did not injure him, and that he was actually hoping to receive so he could file this lawsuit. So, Mr. Dickson lacks standing to maintain his only claim against Direct Energy: alleged vicarious liability for a single violation of the Telephone Consumer Protection Act ("TCPA"), which prohibits placement of certain communications to cell phones without consent. *See* 47 U.S.C. § 227, *et al*.

Direct Energy is a retail energy provider. It sells electricity and natural gas. It is not a telemarketer and did not place the RVM at issue.[1] In fact, it expressly prohibited its telemarketing independent contractor, Total Marketing Concepts ("TMC") from placing any RVM to any individual who did not first consent to receive information about Direct Energy. But before the

---

[1] A factual background of Direct Energy's role in the lawsuit is stated in pages 3-10 of Direct Energy's Response in Opposition to Plaintiff's Motion for Class Certification (Dkt. 111).

Court can even entertain Mr. Dickson's vicarious liability[2] claim, he must first demonstrate a concrete injury arising from the alleged statutory violation. He cannot do that.

The receipt of a 20-second voicemail that did not ring Mr. Dickson's phone or otherwise interrupt him, and was transcribed like a text that Mr. Dickson did not have to listen to, is at most a *de minimis* harm—not the injury contemplated under Article III to sufficiently invoke a federal court's limited jurisdiction. And even if Mr. Dickson could persuade the Court that a single RVM is more than *de minimis* injury, such an injury must still be concrete—in other words, real for him, not abstract. But Mr. Dickson has no concrete injury. He does not recall anything about the RVM, other than the fact that he forwarded it to his lawyer, who then filed suit. What's more, Mr. Dickson was actually pleased to get an RVM because he was hoping to file a TCPA lawsuit. So, not only does he have no injury, much less a concrete one, he is well outside Congress' zone of protected interest under the TCPA. For these reasons, Mr. Dickson lacks standing, and the Court should dismiss the suit for lack of subject-matter jurisdiction.

## FACTUAL BACKGROUND

This is not Mr. Dickson's first encounter with the TCPA. Around June 2017, Mr. Dickson posted a complaint on Facebook about TruGreen, a yard services company that repeatedly contacted his cellphone. Ex. 1, Dickson Dep. 11:15-12:15, 75:14-76:6. Attorney Sam Strauss saw Mr. Dickson's Facebook post and contacted him, offering to bring a TCPA claim against TruGreen. *Id.* at 74:15-75:18. After that case promptly settled, Mr. Dickson started looking for other TCPA opportunities. *Id.* at 11:15-13:6, 74:4-76:6; 87:16–88:23. In fact, Mr. Dickson testified he was ***seeking out*** a TCPA claim when he started receiving RVMs marketing other retail energy

---

[2] To be clear, Direct Energy expressly ***denies*** that it is vicariously liable for any RVMs sent to Mr. Dickson or the putative class and thus none are attributable to it.

2

companies without identifying them by name. *Id.* at 87:16–88:23, 110:4–11. Rather than call back and ask they just stop contacting him, Mr. Dickson forwarded them to Mr. Strauss as he received them. *See id*. at 98:25-99:20. By August 2017, Mr. Dickson and Mr. Strauss decided they would file a TCPA lawsuit; they just did not know whom to sue. *Id.* at 87:16–88:23, 110:4–11. So, when Mr. Dickson received a November 2017 RVM from "Nancy Brown with Direct Energy"—the only RVM he ever received about Direct Energy—he had a name to sue. *Id.* at 87:16-88:23.

As to this single "Nancy Brown" RVM—the only RVM forming the basis of his claim[3]— Mr. Dickson cannot remember anything. He cannot recall ***any*** relevant facts about the RVM. Contrary to his counsel's conclusory statement that the RVM "interrupted his life which took away his attention from what he was doing at the time," Mr. Dickson testified that he does not know where he was, what he was doing, or even what time it was when he received the RVM. *See id*. at 49:18–50:25, 52:6–53:1. Nor can he recall whether he was driving, working, or attending a personal family event. *Id.* 50:7-53:1. He did not "immediately" recognize that he received the RVM, does not know if the phone rang, and does not even know whether he listened to the entire voicemail. *See id.* 49:1-24, 51:1-6. In other words, Mr. Dickson cannot testify as to any injury from the "Nancy Brown" RVM—and therefore cannot carry his burden to show a concrete injury here.

### MR. DICKSON'S RULE 12(b)(1) BURDEN OF PROOF

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'case' and 'controversies.' The constitutional power of federal courts cannot be

---

[3] Mr. Dickson has recently suggested more discovery is needed to determine whether he received more than one RVM. As an initial matter, Mr. Dickson has the burden to establish standing from the outset. But moreover, no discovery is needed because Mr. Dickson's counsel and his expert concede the "Nancy Brown" RVM is the only one Mr. Dickson received about Direct Energy. Pl.'s Mot. for Class Certification, Dkt. 107, at 4; Verkhovskaya Report, Dkt. 107-1, ¶¶ 13, 98-101. His own class certification motion and expert identify only that one RVM. Mot. at 4; Verkhovskaya Report ¶ 99.

3

defined, and indeed has no substance, without reference to the necessity 'to adjudge the legal rights of litigants in actual controversies.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (citation omitted). To establish standing—and entitlement to adjudication of his dispute in federal court—"[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). "To establish injury in fact," the "'[f]irst and foremost' of standing's three elements," "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citations omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist" and must be "'real,' and not 'abstract.'" *Id.*

Where, like here, a plaintiff lacks any concrete injury, "'a Rule 12(b)(1) motion is the proper vehicle for considering whether subject matter jurisdiction exists in a particular case[.]'" *Oron 2015 LLC v. City of Southfield*, 18-CV-12671, 2019 WL 2502739, at *2 (E.D. Mich. June 17, 2019) (citing *Ogle v. Church of God*, 153 F. App'x 371, 374-375 (6th Cir. 2005)). "The plaintiff, as the party invoking federal subject matter jurisdiction, bears the burden of persuading the court that subject matter jurisdiction exists in the case." *Ogle*, 153 F. App'x at 375 (citation omitted). "Where the defendant brings a factual attack on subject matter jurisdiction," as here, "no presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review." *Id.* (citation omitted). "On a factual attack, the Court has broad discretion to consider extrinsic evidence, including affidavits and

4

documents, and can conduct a limited evidentiary hearing if necessary." *Nw. Ohio Props., Ltd. v. Lucas County*, 3:11-CV-1867, 2015 WL 3968751, at *3 (N.D. Ohio June 30, 2015), *aff'd* 634 F. App'x 579 (6th Cir. 2016). "[W]hen a defendant produces evidence challenging the existence of standing, a plaintiff must generally prove standing with evidence[.]" *Harris v. Lexington-Fayette Urban County Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citations omitted).

### **ARGUMENT: MR. DICKSON LACKS STANDING**

Mr. Dickson lacks standing because (1) a single RVM is a *de minimis* act that does not permit federally enforced, judicial relief; (2) he did not suffer any "injury in fact"—he does not even recall receiving the RVM; and (3) he was hunting for a TCPA lawsuit and thus falls outside the zone of interests protected by the TCPA.

**1. Mr. Dickson's receipt of a single RVM is insufficient to confer standing.**

Mr. Dickson asserts a TCPA violation over one RVM. *See* Mot. at 4; Verkhovskaya Report ¶¶ 13, 98-101; *see also* Dickson Dep. 37:11-23, 39:15-40:5. However, a single communication to a cell phone is not an injury-in-fact, as a matter of law, sufficient to warrant adjudication in federal court:

- *Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019) (the "chirp, buzz, or blink of a cell phone receiving a single text message" is "not a basis for invoking the jurisdiction of the federal courts");

- *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020) (confirming *Salcedo* remains good law and that the receipt of a ***single*** text communication allegedly in violation of the TCPA is insufficient to confer standing);

- *Drazen v. GoDaddy.com, LLC*, CV 1:19-00563-KD-B, 2020 WL 2494624, at *4 (S.D. Ala. May 14, 2020) ("[R]eceipt of a single text message is insufficient to establish an injury in fact needed for Article III standing.");

- *Shuckett v. DialAmerica Mktg., Inc.*, No. 17CV2072-LAB (KSC), 2019 WL 3429184, at *3 (S.D. Cal. July 30, 2019) (one unanswered phone call about which plaintiff could not recall any details cannot confer standing);

5

- *Cranor v. 5 Star Nutrition, LLC*, 1-19-CV-908-LY, 2019 WL 8331601, at *3 (W.D. Tex. Nov. 27, 2019) ("The court finds that the receipt of a single text message is not an injury in fact as required by Article III.");

    *Smith v. Aitima Med. Equip., Inc.*, No. EDCV1600339ABDTBX, 2016 WL 4618780, at *4 (C.D. Cal. July 29, 2016) (holding "the receipt of one phone call . . . is comparable to the receipt of a text message and any drainage of battery from a single call is surely minimal" and insufficient to confer standing).

In *Smith*, the court explained a single call was a "de minimis injury [that] is not sufficient to confer standing." 2016 WL 4618780, at *4 (C.D. Cal. July 29, 2016). Likewise, in *Shuckett*, the plaintiff, a doctor, failed to state a concrete injury when she did not recall receiving a phone call on the date she alleged and relied on her usual practice of keeping her phone with her at all times and silencing her phone or handing it to a nurse if she was with a patient. 2019 WL 3429184, at *3. "[I]t is not sufficient for a plaintiff to allege simply that he or she *would have been aware* of the call given what they were doing on that day." *See id.*

The single RVM at issue here is much like the single text message at issue in *Salcedo*. An RVM, like a text message, does not ring or take up phone minutes, Dickson Dep. 26:19-27:1, 49:18-24, and the recipient of the RVM, like Mr. Dickson here, *id.* 49:1-24, 51:1-6, may not immediately be aware they received it and can choose whether to review it or not.[4] *See Salcedo*, 936 F.3d at 1170 (noting text messages received on cell phones are often "silenced" and unlike a fax, "the instantaneous receipt of a text message" does not possess the device); *Garcia v. FCA US, LLC*, 2:19-CV-12750, 2020 WL 2711556, at *1 (E.D. Mich. May 26, 2020) ("[I]t is clear to the

---

[4] The Sixth Circuit's opinion in *Imhoff Investment, L.L.C. v. Alfoccino, Inc.* is inapplicable because it predates *Spokeo* and involves faxes. 792 F.3d 627 (6th Cir. 2015). First, *Imhoff* was decided before *Spokeo*, and thus, "[Mr. Dickson's] reliance on pre-*Spokeo* cases is misplaced." *Lyshe v. Levy*, 854 F.3d 855, 861 (6th Cir. 2017). Second, *Imhoff* is based on the premise that receipt of an unsolicited fax advertisement is sufficient for a concrete injury because of the "occupation of [the] fax machine." *Imhoff*, 792 F.3d at 633. But, as courts post-*Spokeo* and *Salcedo* have recognized, "[c]ases . . . in which courts have found wasted time from receiving a junk fax [is] sufficient to confer standing, are distinguishable." *Eldridge v. Pet Supermarket Inc.*, 18-22531-CIV, 2020 WL 1475094, at *5 (S.D. Fla. Mar. 9, 2020). Specifically, "the time wasted from receiving a junk fax is qualitatively different from time wasted from receiving" an RVM because "[a] fax message consumes the receiving device entirely," while an RVM, like a text message, "consumes the receiving device not at all." *Id.* at *5 n.1.

6

Court that there are similarities between the injury of receiving a single text message and the injury of receiving a single voicemail message."). Indeed, Mr. Dickson's iPhone transcribes voicemails into text that he could quickly review or ignore and delete. *See* Dickson Dep. 42:3-11. Like *Salcedo*, *Shuckett*, and *Smith*, Mr. Dickson's "de minimis injury" arising from the receipt of a single RVM "is not sufficient to confer standing." *Salcedo*, 936 F.3d at 1172; *Shuckett*, 2019 WL 3429184, at *3; *Smith*, 2016 WL 4618780, at *4. In short, a single RVM is "not a basis for invoking the jurisdiction of the federal courts." *Salcedo*, 936 F.3d at 1172. Accordingly, the Court must dismiss the suit for lack of subject-matter jurisdiction.

Mr. Dickson's previous reliance on *Cordoba*, *Susinno*, and *Drazen* is unconvincing. Reply at 9-10 & n.12. All stand for the uncontroversial proposition that receipt of multiple unwanted telemarketing communications can confer standing—and none involved RVMs. The plaintiff in *Cordoba* alleged he received eighteen wrongful calls and sought to represent "a class of all persons who received *more than one* telemarketing call." *Id.*, 942 F.3d 1259, 1264 (11th Cir. 2019) (emphasis added). The plaintiff in *Susinno* alleged two wrongs: a call followed by a voicemail. *See Susinno*, 862 F.3d 346, 348 (3d Cir. 2017). She allegedly "received an unsolicited *call* on her cell phone," and when she "did not answer the call," a "prerecorded" message that "lasted one minute [was left] on her voicemail." *See id.* (emphasis added). In *Cordoba*, the Eleventh Circuit agreed *Susinno*'s "unsolicited *call* to a cell phone *and* a voicemail recording" constituted an injury in fact because "[t]he receipt of *more than one* unwanted telemarketing call" may confer standing. *See Cordoba*, 942 F.3d at 1270 (emphasis added) (citing *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017)). Similarly, in *Drazen*, the court, relying on *Salcedo*, held "a single text message is insufficient to establish" standing, but the receipt of multiple "unsolicited phone *calls*" may confer standing based on *Cordoba* and *Glasser*. 2020 WL 2494624, at *5 (emphasis added).

7

But neither *Glasser*, *Cordoba*, *Susinno*, or *Drazen* held the receipt of a *single RVM* (or phone call), as here, is sufficient to confer standing. *See Glasser*, 948 F.3d at 1306; *Cordoba*, 942 F.3d at 1270; *Susinno*, 862 F.3d at 348; *Drazen*, 2020 WL 2494624, at *5.

**2. Mr. Dickson has no injury—he does not even recall receiving the RVM.**

Alternatively, even if a single RVM could open the doors to federal court, Mr. Dickson still must demonstrate an actual injury-in-fact for which he seeks relief. *Spokeo* held—and emphasized—a statutory violation on its own—without any injury—does not confer Article III standing. *Spokeo*, 136 S. Ct. at 1540 ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *see also Salcedo*, 936 F.3d at 1167 n.4 (11th Cir. 2019) ("Recognizing that 'a bare procedural violation' of a statute 'may result in no harm,' *Spokeo* reaffirms the proposition that we must always look for concrete harm when assessing Article III standing."). "Congress cannot confer standing on a plaintiff—and thus open the door to federal court—when the plaintiff has not sustained an injury in fact; Article III's standing requirements still apply." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020). Therefore, Mr. Dickson must come forward with evidence as to how the single RVM at issue injured him. *See Harris*, 685 F. App'x at 472 ("[W]hen a defendant produces evidence challenging the factual existence of standing, a plaintiff must generally prove standing with evidence, even at the motion-to-dismiss stage.").

Mr. Dickson's testimony, however, confirms his allegation is a "bare procedural violation, divorced from any concrete harm" that *Spokeo* held does not "satisfy the injury-in-fact requirement of Article III." 136 S. Ct. at 1549 (citations omitted). He cannot recall anything specific about the RVM including the day of the week he received it (without looking at his phone), what time it

8

was, what he was doing, or even whether he was working, driving, or at a personal event. *See* Dickson Dep. 49:1-53:1. Mr. Dickson "has not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone. Nor has he alleged that his cell phone was searched, dispossessed, or seized for any length of time." *See Salcedo*, 936 F.3d at 1172; *see also Eldridge*, 2020 WL 1475094, at *5 ("Like the plaintiff in *Salcedo*, Plaintiff 'has not alleged that he was in his home when he received [the] message[s],' or 'anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone,' or any similar scenarios."). Mr. Dickson does not allege that he was charged any additional cost arising from the single RVM. *See* SAC ¶ 31. In fact, he confirmed he had unlimited minutes, *see* Dickson Dep. 56:19-24; thus, he could not have incurred any additional charges arising from the sole RVM.

Because Mr. Dickson has no evidence of any concrete injury arising from the single RVM—and his testimony confirms he was not injured and was hoping for a TCPA lawsuit—he lacks Article III standing, requiring dismissal for lack of subject-matter jurisdiction.

### 3. Mr. Dickson falls outside of the TCPA's zone of interests.

If Mr. Dickson's lack of Article III standing were not enough, he also lacks statutory standing because he falls outside the zone of interests the TCPA was intended to protect. As Mr. Dickson testified, he was on the hunt for the RVM at issue for the sole purpose of bringing a lawsuit. "[A] statutory cause of action[, however,] extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 324 (3d Cir. 2015) (citation and internal quotation marks omitted). If Mr. Dickson "do[es] not 'fall within the zone of interests protected by the law invoked,'" he lacks "statutory standing." *See United States v. All Funds on Deposit with R.J. O'Brien & Assoc.*, 783 F.3d 607,

617 (7th Cir. 2015) (citations omitted). The zone of interests protected by the TCPA is "invasion of privacy and/or general nuisance." *Telephone Science Corp. v. Asset Recovery Sols., LLC*, 15-CV-5182, 2016 WL 4179150, at *16 (N.D. Ill. Aug. 8, 2016). Here, far from any invasion of privacy or nuisance, Mr. Dickson welcomed the calls, placing him outside the zone of interest.

To be clear, Direct Energy does not argue that Mr. Dickson falls outsize the zone of interests protected by the TCPA solely because he "previously filed a TCPA lawsuit." Reply at 12-13. Nor does Direct Energy contend Mr. Dickson lacks standing merely because he seeks to "enforce the law" like a so-called "private attorney general." *See id.* at 1, 12. Rather, because Mr. Dickson "did not suffer the injury contemplated by the TCPA—that is, invasion of privacy and/or general nuisance" when he was on the lookout for an RVM to bring a TCPA suit based on his specific testimony here, he did not "suffer[] any injury within [the TCPA's] 'zone of interests' that would allow [him] to act as a 'private attorney general' under" the TCPA. *See Telephone Science*, 2016 WL 4179150, at *16; Dickson Dep. 11:15-13:5, 76:3-6, 86:12-88:6, 99:4-17, 110:4-11.

For example, in *Telephone Science*, the court held the plaintiff, a company that helps consumers avoid robocalls, "did not suffer the injury contemplated by the TCPA—that is, invasion of privacy and/or general nuisance" when the plaintiff welcomed numerous robocalls in furtherance of its business and in its so-called role as a "private attorney general." *Id.* at *15-16; *see also Leyse*, 804 F.3d at 323 ("Someone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone."); *Mann v. Bales*, 16-CV-09623, 2017 WL 4340108, at *3 (N.D. Ill. Sept. 29, 2017) ("The TCPA confers a private right of action on the basis of individualized violations; it does not permit a plaintiff to commence an action in the name of consumer protection.").

Here, Mr. Dickson did not suffer from the "invasion of privacy" the TCPA was meant to protect. *See Telephone Science*, 2016 WL 4179150, at *16. Instead, he was searching for a TCPA claim when he received the RVM at issue. Dickson Dep. at 87:16–88:6, 110:4–11. By August 2017, he knew he would file a TCPA claim, he just did not know who to sue. *Id.* at 87:16–88:6, 110:4–11. When Mr. Dickson received the Direct Energy RVM in November 2017, he was finally able to identify a defendant and file his planned suit. *Id.* at 88:12–23; Dkt. 1.

For these reasons, Mr. Dickson falls outside the zone of interests protected by the TCPA and lacks statutory standing. For this additional reason, his claim should be dismissed.

## CONCLUSION

Mr. Dickson lacks standing because (1) the receipt of a single RVM is a *de minimis* injury insufficient to confer standing; (2) Mr. Dickson did not—and cannot—testify as to any harm or injury arising from the receipt of the single RVM; and (3) not even Mr. Dickson's generalized testimony of annoyance is sufficient because he welcomed the RVM for the very purpose of bringing this suit, rendering him outside the zone of interests protected by the TCPA. For these reasons, Direct Energy respectfully requests this Court dismiss this case for lack of subject-matter jurisdiction.

DATE: October 9, 2020                  MCDOWELL HETHERINGTON LLP

                                               By: */s/ Michael D. Matthews, Jr.*
                                                      Michael D. Matthews, Jr.*
                                                      Texas Bar No. 24051009
                                                      William B. Thomas*
                                                      Texas Bar No. 24083965
                                                      David L. Villarreal*
                                                      Texas Bar No. 24095434
                                                      1001 Fannin Street, Suite 2700
                                                      Houston, Texas 77002
                                                      T: (713) 337-5580
                                                      F: (713) 337-8850
                                                      matt.matthews@mhllp.com

        william.thomas@mhllp.com
        david.villarreal@mhllp.com

Ashley L. Oliker (0085628)
FROST BROWN TODD LLC
10 W. Broad Street, Suite 2300
Columbus, Ohio 43215
T: (614) 559-7227
F: (614) 464 1737
aoliker@fbtlaw.com

*Admitted Pro Hac Vice

*Counsel for Direct Energy, LP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the 9th day of October 2020 via CM/ECF on all counsel of record.

        */s/ William B. Thomas*
        William B. Thomas

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(f), I hereby certify this case has been assigned to the complex track, Dkt. 32 at 2, and that the foregoing memorandum adheres to the page limitations set forth in Local Rule 7.1(f).

        */s/ William B. Thomas*
        William B. Thomas