UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Matthew Dickson, | ) | CASE NO: 5:18CV182 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Direct Energy, LP, et al., | ) | |
| | ) | |
| | ) | (Resolving Doc. 140) |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is a motion to dismiss filed by the Defendant Direct Energy, LP. Doc. 140. Upon review, the motion to dismiss for lack of standing is GRANTED.

**I.  Motion to Dismiss**

Courts must resolve questions of subject matter jurisdiction before ruling on the merits of the claim. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir.1983). Where the plaintiff has no Article III standing to bring a case, jurisdiction is lacking, and the court must dismiss it. *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 622 (6th Cir. 2000). To have Article III standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). The alleged injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  It is the first

element—the "foremost" of the three, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998))—that is disputed in this matter. In that regard, "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 341.

The specific question presented in this case is whether the receipt of a single ringless voicemail ("RVM") is sufficient to confer standing under the Telephone Consumer Protection Act. The Eleventh Circuit has noted that the receipt of a single, unsolicited *text message* is insufficient to confer standing. *Salcedo v. Hanna*, 936 F.3d 1162, 1167-68 (11th Cir. 2019). The Court noted:

> These allegations are qualitatively different from those in our Circuit precedent that have been successful in establishing standing to sue over a single violation of the TCPA. In *Palm Beach Golf Center–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015), we found standing for a plaintiff who alleged that receiving a junk fax in violation of the TCPA harmed him because, during the minute or so that it took to receive and process the fax message, his fax machine was unavailable for receiving legitimate business messages. *Accord Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) (considering also "the cost of printing the unsolicited fax"). To the extent we have relied on tangible costs such as the consumption of paper and ink or toner to establish injury in fact, Salcedo cannot so rely, since receiving a text message uses no paper, ink, or toner. His complaint alleges generally that some text messages cause recipients to incur costs to their wireless service providers, but he has not alleged specifically that Hanna's text cost him any money.
>
> Salcedo's allegations of intangible costs, on the other hand, bear some facial similarities to those in *Palm Beach Golf*. But they differ in kind, rendering *Palm Beach Golf* inapplicable. At oral argument, Salcedo asserted that receiving Hanna's message was comparable to using a minute of fax machine time, but his complaint does not so allege. Rather, it alleges time wasted only generally. In the absence of a specific time allegation, we decline to assume an equivalence to the facts of *Palm*

> *Beach Golf* when receiving a fax message is qualitatively different from receiving a text message. A fax message consumes the receiving device entirely, while a text message consumes the receiving device not at all. A cell phone user can continue to use all of the device's functions, including receiving other messages, while it is receiving a text message.

*Id*. However, *Salcedo* does not stand alone on the law on this issue. The Second, Seventh, and Ninth Circuits disagree and hold that receipt of a single text message can provide standing to use under the TCPA.

> The Eleventh Circuit treated the injury in its case as abstract partly because common law courts generally require a much more substantial imposition—typically, many calls—to support liability for intrusion upon seclusion. *See, e.g., Sofka v. Thal*, 662 S.W.2d 502, 511 (Mo. 1983). But when *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree. *See* 136 S. Ct. at 1549. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id*. (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)). A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable. *Van Patten*, 847 F.3d at 1043.
>
> We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes.

*Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462–63 (7th Cir. 2020), cert. denied, 141 S. Ct. 2552 (2021).

Courts are similarly divided over the issue of standing as it relates to RVMs. The Northern District of Georgia has found standing over the receipt of a prerecorded voicemail:

> This Court finds that Plaintiff's alleged injury is sufficient for standing. Enduring a prerecorded voicemail for over 30 seconds is more like the unwanted minute-long fax in *Palm Beach*, the unwanted calls in *Cordoba*,

3

and the unsolicited cell phone calls in *Glasser*, than it is like the single unsolicited text message in *Salcedo* for the reasons stated below.

*Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1321 (N.D. Ga. 2020). In contrast, the Eleventh Circuit reached the opposite result when analyzing these facts:

> To support that she has standing, Grigorian pointed to excerpts from her deposition testimony, among other things. Grigorian testified that she first became aware of the voicemail while she was studying for the Florida bar exam. She did not remember hearing her phone ring or hearing a sound to indicate she had a voicemail; rather, she saw the number 1 next to the voicemail icon. Grigorian said her phone was still able to receive data and calls, but she was not able to use her phone or access any other applications while she was listening to the voicemail. She did not incur any financial loss as a result of the voicemail. But she did incur a loss of time—Grigorian said she had to stop studying in order to listen to the voicemail, and she spent time afterwards trying to figure out how her information was obtained and why she was being called.

*Grigorian v. FCA US LLC*, 838 F. App'x 390, 393 (11th Cir. 2020). In rejecting standing, the Court held:

> Here, Grigorian has provided facts that she lost personal time listening to the voicemail. She has not, however, provided facts to show that the single prerecorded voicemail rendered her phone unavailable to receive legitimate calls or messages for any period of time. Without more, we cannot say that she met her burden to show she had standing, particularly in light of this Court's holdings in *Palm Beach Golf Center* and *Salcedo*.

*Id*. at 394.

Having reviewed the plethora of authorities reaching varying conclusions, the Court finds itself in agreement with *Grigorian* and *Salcedo* under the specific facts presented herein. Plaintiff Matthew Dickson received a single RVM that was transcribed similar to a text message. As a court in this Circuit has noted: "it is clear to the Court that there are similarities between the injury of receiving a single text message and the injury of receiving a single voicemail message." *Garcia v. FCA US, LLC*, No. 2:19-CV-12750, 2020 WL 2711556, at *1 (E.D. Mich. May 26, 2020). This Court agrees.

4

Moreover, Dickson's deposition testimony reveals that his allegation is the "bare procedural violation" that *Spokeo* has held cannot give rise to standing. Dickson cannot recall where he was or what he was doing when he received the RVM. His only recollection appears to be that at one point in time he read the RVM and subsequently forwarded it on to counsel because he had previous experience with the TCPA.[1] The only factual allegations in the second amended complaint note:

> 31.  Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.
>
> 32. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the proposed classes.

Doc. 34 at 6. The above facts differentiate this matter from the case resolved by a colleague in this District, *Silbaugh v. Censtar Energy Corp.*:

> Plaintiff claims that when these voicemails are received she is alerted by her phone by means of a tone, alarm or other means similar to what she would happen if she received a text message. She also alleges that in order to listen to the message, consumers must either use cell phone minutes to call into voicemail to retrieve the message, or download the voicemail to their cell phone to listen to the message. She further alleges that if one of these ringless voicemail messages is received while the phone is roaming, it can trigger roaming charges even if the consumer does not receive the message. According to the Second Amended Complaint, there is no way to block ringless voicemail messages from being sent or being received by a consumer's phone.

---

[1] The Court has considered Dickson's deposition testimony based upon the factual challenge raised to this Court's subject matter jurisdiction. "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Ibid*. "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id*. at 759-60.

*Silbaugh v. CenStar Energy Corp.*, No. 1:18 CV 161, 2018 WL 4558409, at *1 (N.D. Ohio Sept. 21, 2018).  Unlike the defendant in *Silbaugh*, Defendant here has successfully refuted the contention that Dickson was charged for the RVM or lost use of his phone upon his receipt of the RVM.  Accordingly, Dickson's sole alleged harm appears to be the *de minimus* time he took to read the RVM, a time so limited that he did not even recall its contents.

The Court finds that under such facts, Dickson cannot demonstrate the concrete harm necessary to show injury-in-fact.  Accordingly, Defendant's motion to dismiss for lack of standing is GRANTED.

IT IS SO ORDERED.


March 25, 2022              /s/ Judge John R. Adams
Date                                         JUDGE JOHN R. ADAMS
                                                  UNITED STATES DISTRICT COURT