IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MATTHEW DICKSON, on behalf of himself and others similarly situated, § § § | |
| Plaintiff, § | |
| v. § | C.A. NO. 5:18-cv-182 |
| § | |
| DIRECT ENERGY, LP, TOTAL MARKETING CONCEPTS, LLC, and SILVERMAN ENTERPRISES, LLC, § § § § | |
| Defendants. § | |

### DEFENDANT DIRECT ENERGY'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OBJECTION TO REPORT AND RECOMMENDATION

Direct Energy submits this Second Notice of Supplemental Authority in support of its Objection to the Report and Recommendation on Summary Judgment. *See* Dkts. 176 (Objection), 180-1 (Reply). *Johnson v. Charter Communications, Inc.*, 2025 WL 2938814 (N.D. Ala. Sept. 26, 2025), attached as Exhibit 1, addresses the agency and authority issues presented here and highlights why summary judgment for Direct Energy is proper. In *Johnson*, the court found that Charter was not vicariously liable for telemarketing calls made by independent contractor Tranche because (1) Tranche was not Charter's agent and, even if it were, (2) it did not have contractual authority to call the plaintiff on Charter's behalf. The same result should follow here.

First, as to agency, the *Johnson* plaintiff argued that Charter exercised sufficient control over Tranche to establish an agency relationship because Charter's contract allowed it to provide training on marketing materials, require marketing scripts for calls with consumers, require that Charter's trade name be used, inspect Tranche's records, conduct compliance audits, give Tranche access to Charter's sales portal, and terminate Tranche for convenience. *Johnson*, 2025 WL 2938814 at *4. But the court found these rights insufficient to establish control, noting that it was undisputed that Charter played no role in hiring, training, supervising, or disciplining Tranche

employees. *Id.* at *5. Based on that fact, the contract's express disclaimer of any agency relationship, and the absence of evidence that Tranche consented to control, the *Johnson* court concluded that Tranche was not Charter's agent as a matter of law because Charter did not exercise the requisite control over Tranche. *Id.*

The undisputed facts in this case are materially indistinguishable from those in *Johnson*. The Direct Energy-TMC agreement and Charter-Tranche agreement both expressly disclaimed an agency relationship, disclaimed either party's right to bind the other (to sales or otherwise), and provided that the contractor could be terminated for convenience. *See* R&R at 10–12. Like Charter, Direct Energy played no role in hiring, training, supervising, or disciplining TMC employees, and Direct Energy's contract gave it audit rights and permitted the use of its trade name like Charter's contract did. *See* R&R at 11–12; Dkt. 168-2 §§ 1.3, 13.1 (Teleservices Agreement). So, as in *Johnson*, control and agency do not exist here as a matter of law.

Second, with respect to authority (assuming an agency relationship did exist), the *Johnson* court found that Tranche's actions fell outside the scope of its authority and directly violated its contract. The contract permitted Tranche to answer inbound calls only and prohibited outbound telemarketing. *Johnson*, 2025 WL 2938814 at *5. But the evidence showed that at least one of Tranche's calls was outbound and that Tranche altered that call recording to make it appear to be inbound. *Id.* at *1. *Johnson* held that Charter could not be vicariously liable for the call. *Id.* at *5.

So too here. The Direct Energy-TMC contract required TMC to obtain opt-in consent before placing RVMs and to otherwise comply with the TCPA. R&R at 9, 14. Indeed, Direct Energy repeatedly insisted that TMC obtain opt-in consent for the relevant RVM campaign. R&R at 16. And as to the RVM Mr. Dickson received, if TMC sent it without his opt-in consent, it did so in violation of Direct Energy's contract and repeated demands—outside the scope of any

2

potential authority. Further, like Tranche's manipulation of its call recording, when Direct Energy asked TMC for proof of Mr. Dickson's consent, TMC manufactured a record to suggest that he opted-in. R&R at 19; *see also* Dkt. 168-32. Such actions are outside the scope of any authorized activity and cannot support vicarious liability. As *Johnson* makes clear, placing calls (here, RVMs) and manipulating evidence in direct violation of the parties' contract is dispositive on the question of vicarious liability (even assuming an agency relationship which, again, did not exist). *See Johnson*, 2025 WL 2938814 at *5.

*Johnson* thus reinforces Direct Energy's position that the R&R is wrong with respect to agency and apparent authority because the record shows that it had no agency relationship with TMC and that TMC did not have authority to place any RVMs on Mr. Dickson's phone without his consent. The Court should sustain Direct Energy's objections to the R&R, grant its motion for summary judgment, and dismiss Mr. Dickson's claims against it with prejudice.

DATE: October 23, 2025

McDowell Hetherington LLP

By: */s/ Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.*
Texas Bar No. 24051009
Diane S. Wizig*
Texas Bar No. 24106594
William B. Thomas*
Texas Bar 24083965
David L. Villarreal*
Texas Bar No. 24095434
1001 Fannin Street, Suite 2400
Houston, Texas 77002
T: (713) 337-5580
F: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com
william.thomas@mhllp.com
david.villarreal@mhllp.com

*Admitted Pro Hac Vice

3

        Frank S. Carson (0089575)
        FROST BROWN TODD LLC
        10 W. Broad Street, Suite 2300
        Columbus, Ohio 43215
        T: (614) 559-7227
        F: (614) 464 1737
        fcarson@fbtlaw.com

*Counsel for Direct Energy, LP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on all counsel of record on the 23rd day of October 2025.

        */s/ Diane S. Wizig*
        Diane S. Wizig