# EXHIBIT 1

2025 WL 2938814
Only the Westlaw citation is currently available.
United States District Court, N.D. Alabama, Northeastern Division.

DEMYA JOHNSON, Plaintiff,

v.

CHARTER COMMUNICATIONS, INC., Defendant.

Case No.: 5:20-cv-2056-LCB
|
Filed 09/26/2025

## MEMORANDUM OPINION & ORDER

LILES C. BURKE UNITED STATES DISTRICT JUDGE

*1  DeMya Johnson filed a complaint against Charter Communications, Inc. on December 22, 2020, and later amended it twice. In her second amended complaint she added Tranche Technologies, Inc., as a defendant. Johnson alleges that, beginning in 2019, she received unwanted telemarketing calls from a company she believed to be Charter despite having registered her telephone number with the Federal Trade Commission's "Do Not Call Registry." Discovery revealed that Tranche, a company affiliated with Charter, was responsible for at least some of those calls. Based on this conduct, Johnson contends that both Charter and Tranche violated provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. She further alleges that Charter was negligent in hiring, training, and supervising Tranche; that both defendants are liable for spoliation; that Charter acted negligently; and that Tranche committed fraud. (Doc. 93). The Court granted Charter's partial motion to dismiss and dismissed Counts III, IV, and V of Johnson's complaint. The Court entered a default judgment against Tranche on August 20, 2025, as to Counts I and II. Johnson did not seek default judgment as to Count VI. Thus, the remaining claims are Count I, in which Johnson alleges a violation of 47 U.S.C. § 227(b)[1], and Count II where she alleges that Charter violated and 47 U.S.C. § 227(c)(5) by calling her despite her registration on the National Do-Not-Call Registry.

There are three motions before the Court: Charter's motion for summary judgment on the remaining claim (Doc. 177); Johnson's motion for summary judgment on that same claim (Doc. 179); and Johnson's motion for sanctions against Charter (Doc. 144). For the following reasons, and with the benefit of oral argument, the Court will grant Charter's motion for summary judgment and deny Johnson's motions.

### I. Background

As explained in the order granting Charter's partial motion to dismiss:

> The allegations giving rise to this action are simple: Johnson received dozens of telemarketing calls from a company purporting to be Charter after placing her telephone number on a national registry indicating that she did not wish to receive such calls. Johnson's initial complaint and her first amended complaint alleged that Charter violated the TCPA by making the calls in question. (Docs. 1 and 8). One of those calls was alleged to have been made on or about December 26, 2019. In its answer to Johnson's amended complaint, Charter denied making any of the calls (Doc. 15 at 3), and in other documents produced to plaintiff's counsel, suggested that the calls in question may have been placed by unauthorized third parties who sometimes pretend to be affiliated with Charter and who may even "spoof" a telephone number belonging to Charter in furtherance of their scheme. But then discovery began.

**\*2**  Through various disclosures and communications, Charter informed Johnson that Tranche was the entity with whom she spoke on December 26, 2019. Charter purported to have obtained a recording of that call through its investigation and, Charter said, the recording indicated that Johnson was the party who initiated the call, i.e., Johnson placed a call to Tranche to inquire about Charter's services. Despite this contention, Johnson maintained that the December 26th call was made to her, not by her. She subpoenaed her cellular telephone records from her service provider, and those records showed that the December 26th call was inbound to Johnson, not outbound to Tranche as the recording appeared to suggest.

After Tranche was added as a defendant, it failed to timely respond to the complaint. The Clerk therefore entered default on January 10, 2023. (Doc. 116). However, the default was set aside when Tranche obtained counsel who entered an appearance and filed an answer. In its answer, Tranche admitted to making two calls to Johnson in December of 2019. (Doc. 123 at 4). Tranche also admitted that its employees altered the recording of the December 26, 2019 call to make it appear as though Johnson initiated the call. (Doc. 123 at 8 and 12). Tranche further explained in its answer that "[s]ubordinates in Pakistan working for Tranche altered the beginning of the audio recording to make it appear as though the call was initiated by the Plaintiff. This was done by the subordinates because they were concerned about losing their jobs as a result of making outbound sales calls (prohibited by the Charter Communications Reseller Agreement)." *Id.* at 16.

At some point after Tranche filed its answer, it ceased all communication with its attorney who subsequently filed a motion to withdraw. After a hearing on the matter, the Court granted that motion and ordered Tranche to obtain new counsel by May 9, 2023.

After the Court granted Tranche's counsel leave to withdraw, it ceased participating in the case. This ultimately led the Court to grant Johnson's motion for default judgment against Tranche. (Doc. 196).

### II. Relevant Undisputed Facts

Charter is a nationwide provider of " 'Spectrum' brand phone, cable and internet services." (Doc. 180 at 7; doc. 178-1 at 2). In marketing those services, Charter employs various methods "including direct mail, in-person selling at trade shows, door-to-door sales, internet marketing, and outbound telemarketing." (Doc. 178-1 at 2). Charter also employs a commonly used reseller system to market its products, paying its resellers performance-based commissions. In a version of this system relevant here, Charter used Tranche to market and sell their services via pay-per-click advertising. For example, someone searching the Internet for "cheap cable deals in my area" would see one of Tranche's ads on Google, click on it, and be directed to one of Tranche's authorized websites, which listed phone numbers for consumers to call. That call would connect the prospective customer with Tranche who could then market Charter's services and facilitate the caller's enrollment.

Tranche is a New York-based company operated from Pakistan. Tranche entered into Charter's standard Reseller Marketing Agreement (the "Marketing Agreement"), which, among other things, expressly prohibited outbound telemarketing: "Reseller is prohibited, directly or indirectly, from soliciting subscriptions for Charter Services via ... outbound telemarketing, either live or recorded." (Doc. 37-3 at 6). The Marketing Agreement also required Tranche to comply with all applicable laws, ordinances, rules, and regulations. *Id.* at 14. On or about August 8, 2019, Tranche signed the Charter Communications Marketing Rules which reiterated Charter's ban on outbound telemarketing: "The following sales tactics are prohibited: ... Soliciting subscriptions for Charter Services, directly or indirectly, via ... text messaging or outbound telemarketing, either live or recorded...." (Doc. 57-1 at 18).

**\*3**  The Marketing Agreement states that Charter will provide to Tranche training on the proper use of its marketing materials, and it grants Charter the right to inspect Tranche's records relating to user information and to conduct semiannual compliance audits. The Marketing Agreement also prescribes specific language for Tranche's employees to use when speaking with prospective customers and obligates Tranche to ensure that all promoted services are clearly branded with Charter's trademarks, service marks, trade names, logos, and other insignia. In addition, Tranche was authorized to use Charter's "Retail Portal," which allows it to facilitate sales and schedule installations.

### III. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution "may affect the outcome of the suit under the governing law." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). A dispute is "genuine" if, under the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)). In deciding whether there is a genuine dispute as to a material fact, a court must presume the nonmovant's evidence to be true and draw all reasonable inferences in the nonmovant's favor. *Allen*, 495 F.3d at 1314 (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003)); *Earley v. Champion International Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

### IV. Discussion

In her Second Amended Complaint, Johnson clarifies that she seeks to hold Tranche and other unidentified third parties directly liable for the calls, while pursuing only vicarious liability against Charter. Thus, the central question in both summary judgment motions is whether Charter can be held vicariously liable for Tranche's conduct. To answer that question, the Court must determine whether Tranche was Charter's agent under common law agency principles. An agency relationship "is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958). Between the parties, Johnson asserts that Charter is the principal and Tranche is the agent. *See* Restatement (Second) of Agency § 1 (1958) ("(2) The one for whom action is to be taken is the principal. (3) The one who is to act is the agent.").

Charter argues that the undisputed evidence demonstrates that no agency relationship exists between itself and Tranche. Charter describes its relationship with Tranche as follows:

> The Marketing Agreement provides that Tranche is an independent contractor. Tranche controlled its own day-to-day operations, including any call center that was used in any aspect of its business. Charter did not provide Tranche with any office space, telephone equipment, or other equipment for Tranche to engage in its work. Charter did not control the days or hours of Tranche's operations or supervise Tranche's activities on a day-to-day basis. Tranche hired its own staff, and Charter could not hire or fire any of those individuals. Charter paid Tranche on a commission basis.
>
> **\*4** ... Charter did not have any access to Tranche's records. Tranche only possessed access to a one-way external portal maintained by Charter that could be used to submit potential customers to Charter. Tranche did not have access to Charter's subscriber records, billing systems, or other back-end systems. Nor did it have access to Charter's consumer information or marketing database of potential customers.
>
> ... Tranche did not market exclusively on behalf of Charter; it could (and it is Charter's understanding that it did) attempt to facilitate sales for other industry participants or clients at the same time it was digitally marketing for Charter.

(Doc. 178 at 11–12 (citations omitted)).

Johnson disagrees with parts of this description and asserts that Tranche was implicitly authorized to telemarket and that while the agreement does state that Tranche is an independent contractor, such a classification is not legally dispositive to vicarious liability. Johnson also points out that Charter had certain audit rights to Tranche's records.

Courts consider following factors in determining whether an actual agency relationship exists: "(1) direct evidence of the principal's right to or actual exercise of control; (2) the method of payment for an agent's services, whether by time or by the

job; (3) whether or not the equipment necessary to perform the work is furnished by the principal; and (4) whether the principal had the right to fire the agent." *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 797 (11th Cir. 2017). According to Johnson, Charter had the ability to direct and control Tranche, provided equipment and materials to Tranche, and had the ability to bind Charter in contract. Therefore, Johnson says, Tranche was Charter's agent.

Johnson argues that the Marketing Agreement "affords Charter the ability to direct and control virtually all aspects of Tranche's marketing activities." (Doc. 188 at 19). As support for this broad assertion, Johnson points to the fact that Charter has the right to inspect Tranche's records relating to user information and to conduct semiannual compliance audits; that Tranche is obligated to ensure that all promoted services are clearly branded with Charter's trademarks, service marks, trade names, logos, and other insignia; and that the Marketing Agreement prescribes specific language for Tranche's employees to use when speaking with prospective customers.

In *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189–90 (11th Cir. 2009), the United States Court of Appeals for the Eleventh Circuit discussed consent and control in the context of a purported agency relationship when it affirmed a district court's finding that no agency relationship existed between the parties. The Eleventh Circuit noted, as did Johnson, that " '[e]xpress disclaimers of agency do not necessarily eliminate the existence of an agency relationship[.]' " *Id.* at 1189, quoting *Carr v. Stillwaters Dev. Co., L.P.*, 83 F. Supp. 2d 1269, 1279 (11th Cir.1999). However, the court noted that the purported principal "went to great pains to disclaim any agency relationship" and that the agreement between the parties contained "multiple provisions specifically disclaiming any agency relationship." *Id.* The court held that "the fact that FxCM [the purported principal] expended such considerable efforts to avoid an agency designation is palpable evidence that FxCM did not intend to consent or acquiesce to an agency relationship with GMC [the alleged agent]." *Id.* Given the above-quoted language from the Marketing Agreement, the same can be said of Charter in the present case.

**\*5** But the Eleventh Circuit went on to hold that the evidence showed that FxCM lacked the requisite control over GMC in part because it was undisputed that FxCM played no role in hiring, training, supervising, or disciplining GMC's employees. In *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 797 (11th Cir. 2017), the Eleventh Circuit similarly affirmed a district court's finding that no agency relationship existed based in part on the lack of evidence that the purported principal "had the right to or did participate in [the alleged agent's] day-to-day operations." The court also found support for its conclusion because the purported principal paid the alleged agent "by the job" rather that "by time" noting that paying an affiliate by time normally suggests an agency relationship. *Id.* The court also noted that the purported principal did not furnish the alleged agent with equipment necessary to perform its work and that while it did retain the right to terminate its agreement "for convenience," the evidence, taken as a whole, did not allow a reasonable jury to conclude that there existed the degree of control so as to create an agency relationship. *Id.*

Much of the same can be said of the relationship between Charter and Tranche. As discussed above, it is undisputed that Charter played no role in hiring, training, supervising, or disciplining Tranche's employees. Charter did not pay Tranche an hourly wage and although the Marketing Agreement provides that Charter would provide marketing materials to Tranche, it is undisputed that Charter did not provide the workspace, telephone equipment, or other equipment for Tranche to actually engage in its work. Taken together with Charter's vigorous attempt to disclaim any agency relationship in the Marketing Agreement, the undisputed facts show that it did not exercise any significant control over Tranche. While Charter did have certain rights to audit and inspect Tranche's work, that right did not give it the requisite control to imply an agency relationship, and there is no evidence that Tranche consented to any such control and direction.

Johnson also asserts in a subheading that Tranche had the ability to bind Charter in contract and that this ability is a significant factor in determining whether an agency relationship exists. But in the body of that subsection, Johnson points only to the fact that Tranche had "the ability to sell Spectrum cable/internet plans." (Doc. 188 at 27). The Marketing Agreement directly refutes her assertion that Tranche could bind Charter in contract by providing that "[n]either party shall have any right, power or authority to enter into any agreement of or on behalf of, or incur any obligation or liability of, or to otherwise bind," the

other party. (Doc. 37-3 at 18). Based on the foregoing, the Court finds the undisputed evidence to demonstrate that no agency relationship existed between Charter and Tranche.

Johnson also cites to caselaw for the proposition that, "when assessing the imposition of vicarious liability under common law agency precedent, the question is not whether the agent's specific tortious act was permitted by the principal, but (1) whether the principal had the ability to direct and control the agent's activities and (2) whether the agent was acting generally within the scope of their duties." (Doc. 188 at 28), citing *St. Louis-San Francisco Ry. Co. v. Robbins*, 219 Ala. 627, 629, 285 (Ala. 1929). While this proposition, as well as the other cases Johnson cites, presupposes the existence of an agency relationship, the Court finds the second element worthy of some discussion.

Johnson argues that Tranche's unauthorized telemarketing was within the scope of its duties, but the Court disagrees. In many of the cases Johnson cites, the alleged agents were telemarketers authorized to place outbound calls but accused of doing so improperly. Thus, their behavior in making those calls could be said to be within the scope of their duties. But in this case, Tranche's duties were to answer *inbound* calls and then market and sell Charter's services; it was specifically prohibited from making *outbound* calls. Thus, outbound calls were not merely outside the scope of Tranche's duties—they were expressly prohibited.

**\*6** Courts in the Eleventh Circuit have held that such a prohibition defeats an actual authority theory. *See, e.g., Cordoba v. DIRECTV, LLC*, No. 1:15-CV-3755, 2021 WL 6841777, at \*8 (N.D. Ga. Feb. 12, 2021) (where an agreement expressly prohibits the activity at issue, the principal cannot be held liable under an actual agency theory and granting summary judgment in favor of defendant where "[t]he evidence before the Court establishes that DIRECTV categorically banned all residential and cellular cold calls"); *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 798 (7th Cir. 2016) (no actual authority where communications at issue prohibited by parties' agreement).

Johnson also argues that Charter is vicariously liable under a theory of implied actual authority. Implied actual authority has been defined as "actual authority given implicitly by the principal to the agent; and, as otherwise stated, it is actual authority circumstantially proved, or evidenced by conduct or inferred from course of dealing between the alleged principal and agent." *Boone's Pharmacy, Inc. v. EzriRx, LLC*, No. CV 22-00375-JB-N, 2023 WL 4874785, at \*4 (S.D. Ala. July 31, 2023) (internal citation omitted). Johnson points to Charter's incentive-based payment method to Tranche as support for this theory and the fact that Charter continued its relationship with Tranche after it was put on "constructive knowledge" that Tranche placed an outbound call to Johnson. But again, this theory presupposes that an agency relationship existed and that the agent was acting outside the scope of his authority. Because the Court finds no evidence that supports such a relationship, this theory of liability fails.

Johnson also argues that Charter ratified Tranche's behavior for similar reasons. But this also presupposes the existence of an agency relationship. *See Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992) (A principal ratifies an act of its agent when it expressly adopts the agent's behavior or implicitly approves agent's the behavior.). Accordingly, this theory fails as well.

### V. Sanctions

Johnson seeks an adverse inference against Charter based on its alleged failure to ensure that Tranche maintained or preserved the phone records relevant to this litigation. Specifically, she asks the Court to instruct that, during dispositive and post-trial motions as well as at trial, the jury or Court may infer that any records produced by Johnson indicate that corresponding records from Charter or Tranche would have been unfavorable to Charter. (Doc. 144 at 19). After consideration of the associated briefing, the Court declines to impose this sanction on Charter and will deny Johnson's motion. Additionally, the Court notes that it has not relied on any of Johnson's records in deciding this motion.

### VI. Conclusion

For the foregoing reasons, Charter's motion for summary judgment (Doc. 177) is **GRANTED**; Johnson's motion for summary judgment (Doc. 179) is **DENIED**; and Johnson's motion for sanctions (Doc. 144) is **DENIED**. A separate, final judgment will be entered.

As noted at the beginning of this opinion, the Court granted Johnson's motion for a default judgment against Tranche as to Counts I and II. In her motion for default judgment, Johnson asked the Court to hold in abeyance any decision on damages until a final judgment is entered regarding her claims against Charter. Johnson is ordered to file within 14 days a detailed notice of the damages she seeks to recover from Tranche.

 *7  **DONE** and **ORDERED** September 26, 2025.

**All Citations**

Slip Copy, 2025 WL 2938814

Footnotes

| | |
|---|---|
| 1 | At oral argument, Johnson stated that she would not proceed with Count I insofar as it alleged a statutory violation for using an automatic telephone dialing system. She does intend to proceed with that claim as it relates to calls alleged to have been made using a prerecorded voice. |

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.