# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| MATTHEW DICKSON, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED; | ) CASE NO. 5:18-CV-00182-JRA ) ) JUDGE JOHN R. ADAMS ) |
| Plaintiff, | ) ) MAGISTRATE JUDGE ) CARMEN E. HENDERSON |
| v. | ) ) **ORDER** |
| DIRECT ENERGY, LP, TOTAL MARKETING CONCEPTS, INC., SILVERMAN ENTERPRISES, LLC, | ) ) |
| Defendants, | |

This matter was referred to a Magistrate Judge for preparation of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. Section 636(b), Fed. R. Civ. P. 72, and LR. 72.1. The R&R (Doc. 175) was completed and recommended that Defendant Direct Energy, LP's ("Direct Energy") motion for summary judgment. (Doc. 168) be denied. Direct Energy objected to the R&R, Plaintiff Matthew Dickson responded to those objections, and Direct Energy replied in support. The Court now reviews those objections de novo with respect to those portions of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1).

### I. Background

The R&R correctly detailed the factual background of this matter as was previously set forth by the Sixth Circuit.

> The Sixth Circuit Court of Appeals set forth the following brief summary of the background of this case:

1

> This case arises from unauthorized prerecorded messages allegedly sent to Dickson by Direct Energy. Specifically, Dickson alleges that Direct Energy delivered multiple [ringless voicemails ("RVMs")] to his cell phone in 2017 advertising its services.
>
> RVM technology makes it possible to "deposit[ ] voicemails directly into a recipient's voicemail box, without placing a traditional call to the recipient's wireless phone." One RVM placed on November 3, 2017, explicitly stated that the call was from "Nancy Brown with Direct Energy." Dickson never consented to receiving these communications. He thus filed suit individually and on behalf of all others similarly situated, alleging that Direct Energy violated the TCPA's automated calling prohibitions under 47 U.S.C. § 227(b)(1) by sending RVMs.[ ] Dickson claims that he was harmed by these communications because they tied up his phone line, cost him money, and were generally a nuisance. He also maintains that the calls disturbed his solitude and invaded his privacy.
>
> *Dickson v. Direct Energy, LP*, 69 F.4th 338, 341–42 (6th Cir. 2023) (footnote omitted).

Doc. 175 at 1-2. The parties do not dispute these core facts. Instead, the sole focus of summary judgment revolves around whether Direct Energy can be held liable through a theory of agency for the RVMs allegedly received by Dickson. Dickson must rely upon an agency theory because it is undisputed that Direct Energy never sent Dickson any RVM. Instead, Defendant Total Marketing Concepts, Inc. ("TMC") or one of its vendors sent the RVMs at issue.

In resolving this issue, the R&R found that there remained a genuine issue of fact surrounding whether a jury could find that a principal/agent relationship existed between Direct Energy and TMC. Direct Energy has objected to each theory that the R&R found warranted a denial of summary judgment. The Court now reviews those specific objections.

Initially, the Court acknowledges that "both the Federal Communications Commission (which implements the TCPA) and federal courts (which interpret it) recognize vicarious liability under the TCPA under 'federal common law principles of agency.'" *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 584 (S.D. Ohio 2016) (quoting *In re Jt. Pet. Filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6574 (2013)) ("[A] seller...may be held vicariously liable under federal

common law principles of agency for violations of [the TCPA] that are committed by third-party telemarketers."); *Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) ("The *DISH Network* decision further found that the seller may be *vicariously* liable for such violations under federal common law agency principles."); *Keating v. Peterson's Nelnet, LLC*, 615 Fed.Appx. 365, 371 (6th Cir. 2015) (recognizing and exploring vicarious liability under the TCPA). "Any other interpretation of the TCPA 'would allow companies to evade TCPA liability simply by creative contracting.'" *Johansen*, 218 F. Supp. 3d at 584 (quoting *McCabe v. Caribbean Cruise Line, Inc.*, No. 13–cv–6131, 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014) (quotation omitted)).  An entity may be held vicariously liable under the TCPA under "traditional agency tenets, including not only formal agency, but also principles of apparent authority and ratification." *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (quotation marks and citation omitted).

In finding that a question of fact remained regarding whether an agency relationship existed, the R&R first properly noted that the parties' initial contract clearly disclaimed any such relationship.

> 13.1 Relationship of the Parties. This Agreement is not intended to create, and does not create, any partnership, joint venture, fiduciary, employment, or other relationship between the parties, beyond the relationship of independent parties to a commercial contract. Neither party is, nor will either party hold itself out to be, vested with any authority to bind the other party contractually, or to act on behalf of the other party as a broker, agent, or otherwise.

(ECF No. 168-2 at 20).  However, the R&R then went on to find that a subsequent agreement between the parties on March 23, 2015 altered the parties' agreement. Specifically, the R&R noted that the "record evidence shows that Direct Energy expressly authorized TMC to (among other things) close sales on Direct Energy's behalf and thereby bind Direct Energy in contracts with

3

customers." Doc. 11 at 33. Direct Energy has objected to this finding, and the Court finds merit to the objection.

> The Statement of Work relied upon by the R&R includes the following provisions:
>
> h. Vendor shall call record and verify all telemarketing calls made or received by Services Provider and/or CSRs that result in sales to any third party ("Verified Sales").
>
> [. . .]
>
> p. Vendor shall evaluate each recorded sale as it pertains to the verification portion of the Script and ensure all requirements are met.
>
> q. Vendor shall provide complete daily sales file(s) to Direct Energy in a format acceptable to Direct Energy.

Doc. 168-4 at 3-4. This Court cannot find from the record that the above provisions allowed TMC to *bind* Direct Energy to any contract. In fact, the record reflects that no contract was formed between Direct Energy and any customer attained by TMC until Direct Energy sent out its Terms and Conditions and did not receive a rejection from the customer. Moreover, Sean Feeley's deposition further clarifies that TMC only received commission on "good sales." In other words, the record reflects that TMC could complete an *initial step* in the process that ultimately led to a contract between TMC and a consumer. The record refutes any suggestion, however, that TMC had the authority to bind Direct Energy to any contract. As such, the R&R's reliance on such a fact to deny summary judgment was in error.

Having found that the R&R relied upon an incorrect factual finding in support of its determination, this Court independently reviews whether there remains any genuine issue of fact surrounding whether an agency relationship existed. "Agency is a 'fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests

4

assent or otherwise consents so to act.' " *Jayson Rogers, Plaintiff, v. Interstate Nat'l Dealer Servs. Inc., et al., Defendants.*, No. 1:20 CV 00554, 2020 WL 4582689, at *4 (N.D. Ohio Aug. 10, 2020) (quoting *Restatement (Third) of Agency* § 1.01 (2006)). "In particular, '[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.'" *Id.* Whether an agency relationship exists is based on an assessment of the facts of the relationship and not on how the parties define their relationship. *Restatement (Third) of Agency* § 1.02; *see also Jackson v. Novastar Mortg., Inc.*, 645 F. Supp. 2d 636, 642 (W.D. Tenn. 2007); *Smith v. Vision Solar LLC*, No. CV 20-2185, 2022 WL 1172985, at *3 (E.D. Pa. Apr. 20, 2022; *Frey v. Frontier Utilities Ne. LLC*, No. CV 19-2372-KSM, 2020 WL 12697468, at *2 (E.D. Pa. Apr. 13, 2020) (vicarious liability turns not only on the language used in a contract between the parties but also on 'the actual practice between the parties.'" (quoting *Klein v. Com. Energy, Inc.*, 256 F.Supp.3d 563, 585 (W.D. Pa. 2017)).

Direct Energy argues that the clear wording of the "operative contract" between Direct Energy and TMC precludes a finding that TMC was an agent of Direct Energy rather than an independent contractor. (ECF No. 168 at 22-24) (relying on *Keating*, *Kahler v. Fid. Mut. Life, Inc.*, No. 5:16CV287, 2018 WL 1365836, at *2 (N.D. Ohio Mar. 16, 2018) (Adams, J.), *appeal dismissed*, No. 18-3349, 2018 WL 3494640 (6th Cir. June 18, 2018), and *Worsham v. Direct Energy Servs., LLC*, No. CV SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021), *aff'd,* No. 21-1677, 2022 WL 1261998 (4th Cir. Apr. 28, 2022)). In *Keating*, the Sixth Circuit upheld summary judgment in favor of an alleged principal finding no principal/agent relationship existed because 1) the "clear wording of the operative contract" stated that the alleged agent was independent contract and that the alleged agent was not authorized to make or accept any representations on behalf of the alleged principal; and 2) the alleged wrongful acts were not made

by the alleged agent, but rather by a third party unbeknownst to the alleged principal or the alleged agent. *Keating*, 615 F. App'x at 372.

In analyzing the agency issue here, the Court notes that the non-binding supplemental authority offered by Direct Energy, *Johnson v. Charter Communications, Inc.*, 2025 WL 2938814 (N.D. Ala. Sept. 26, 2025), analyzed a substantially similar set of facts.

> Much of the same can be said of the relationship between Charter and Tranche. As discussed above, it is undisputed that Charter played no role in hiring, training, supervising, or disciplining Tranche's employees. Charter did not pay Tranche an hourly wage and although the Marketing Agreement provides that Charter would provide marketing materials to Tranche, it is undisputed that Charter did not provide the workspace, telephone equipment, or other equipment for Tranche to actually engage in its work. Taken together with Charter's vigorous attempt to disclaim any agency relationship in the Marketing Agreement, the undisputed facts show that it did not exercise any significant control over Tranche. While Charter did have certain rights to audit and inspect Tranche's work, that right did not give it the requisite control to imply an agency relationship, and there is no evidence that Tranche consented to any such control and direction.
>
> Johnson also asserts in a subheading that Tranche had the ability to bind Charter in contract and that this ability is a significant factor in determining whether an agency relationship exists. But in the body of that subsection, Johnson points only to the fact that Tranche had "the ability to sell Spectrum cable/internet plans." (Doc. 188 at 27). The Marketing Agreement directly refutes her assertion that Tranche could bind Charter in contract by providing that "[n]either party shall have any right, power or authority to enter into any agreement of or on behalf of, or incur any obligation or liability of, or to otherwise bind," the other party. (Doc. 37-3 at 18). Based on the foregoing, the Court finds the undisputed evidence to demonstrate that no agency relationship existed between Charter and Tranche.

*Id.* at *5.  The Court agrees with the underlying rationale in the above holding.  The substantive facts in *Johnson* closely mimic those here and compel the same result.  While Direct Energy undoubtedly had a close relationship with TMC, it did not have the requisite control over TMC to form an agency relationship.

Direct Energy played no role in hiring, training, supervising, or disciplining TMC's employees.  Similarly, as detailed above, despite Dickson's argument to the contract, TMC lacked

6

any authority to bind Direct Energy contractually.  Moreover, Direct Energy took similar steps to Charter in that it took great pains to disclaim any agency relationship with clear and concise language in the parties' contract.  Accordingly, the Court finds that no evidence exists to create a genuine issue of fact surrounding agency.  Instead, the record reflects that no agency relationship exists as a matter of law.  Direct Energy's motion for summary judgment, therefore, is GRANTED.

### Defendants TMC and Silverman Enterprises, LLC

Dickson also alleged that TMC and Silverman Enterprises violated the TCPA by contacting him through RVMs. Both TMC and Silverman Enterprises initially defended the lawsuit. However, neither TMC nor Silverman Enterprises has engaged in defense of the litigation in any meaningful way since 2019 and 2020, respectively.  The R&R show caused these defendants and recommended that default be entered if they failed to appear.  Neither party has appeared. Accordingly, default is hereby entered against both parties with respect to all claims that remain pending against them.

The remaining parties shall have 14 days to move for default judgment or voluntarily dismiss any remaining claims against these parties.  Accordingly, this is not a final order subject to appeal until those claims have been resolved.


  12/16/2025                                                         /s/John R. Adams
Date                                                                John R. Adams
                                                                      U.S. District Judge