IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MATTHEW DICKSON, on behalf of himself and others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>DIRECT ENERGY, LP, TOTAL MARKETING CONCEPTS, INC., and SILVERMAN ENTERPRISES, LLC<br><br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§　C.A. NO. 5:18-cv-182<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**DIRECT ENERGY'S MOTION FOR DEFAULT JUDGMENT
ON CROSSCLAIMS AGAINST TOTAL MARKETING CONCEPTS**

## I. INTRODUCTION

Defendant/Crossclaimant Direct Energy, LP contracted with Codefendant/Crossdefendant Total Marketing Concepts, Inc. ("TMC") under a Teleservices Agreement and accompanying Statements of Work (collectively the "Agreement") to conduct telemarketing to potential customers in compliance with the Telemarketing Consumer Protection Act ("TCPA"). Direct Energy paid TMC at least $527,133.60 to obtain and maintain detailed call-consent records, including TrustedForm certificates proving such compliance.

Plaintiff Matthew Dickson alleges that he received a ringless voicemails ("RVM") about Direct Energy without his consent. When Direct Energy asked TMC for proof that Mr. Dickson consented to be contacted, TMC provided an Excel spreadsheet with information about Mr. Dickson and a screenshot of a website through which he purportedly provided that information and his consent. But discovery later showed that TMC manufactured the purported proof. Further, TMC was unable to provide the TrustedForm Certificates it was required to obtain and maintain because it stopped paying for the account that stored them. TMC initially answered Mr. Dickson's lawsuit, but later stopped participating and defaulted on Direct Energy's Crossclaim.

Due to TMC's misrepresentations and breaches of the Agreement, Direct Energy received no value from the $527,133.60 it paid TMC to obtain and maintain TCPA-compliant opt-in consents. Direct Energy was also forced to incur attorneys' fees and costs defending Mr. Dickson's lawsuit—fees and costs for which TMC is contractually obligated to indemnify Direct Energy. The Court recently granted Direct Energy's Motion for Summary Judgment and held that it cannot be vicariously liable for TMC's alleged TCPA violations as a matter of law. Direct Energy now moves for default judgment on its crossclaims for fraud, breach of contract, and indemnification against TMC and seeks the $527,133.60 it paid TMC for opt-in leads and $2,416,495.53 in attorneys' fees and costs as damages plus pre- and post- judgment interest.

## II. FACTUAL BACKGROUND

Because the Court entered default against TMC, the factual allegations in Direct Energy's Crossclaim (Dkt. 106) are deemed admitted as a matter of law. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bradshaw*, No. 1:24-CV-00937-PAB, 2025 WL 1104851, at *4 (N.D. Ohio Apr. 14, 2025) (holding that default judgment standards apply to crossclaims with factual allegations accepted as true for liability purposes). Direct Energy incorporates the factual allegations in its Crossclaim as if stated here in full and briefly restates them here for purposes of this Motion.

Direct Energy is a retail energy supplier that contracted with TMC, as an independent contractor, to perform telemarketing operations as outlined in the parties' Agreement under which TMC had to comply with "all applicable laws" including the TCPA. *See* Crossclaim ¶¶ 1–4.

To ensure such compliance, TMC was only authorized to contact a wireless number after an individual provided express written opt-in consent to be contacted about Direct Energy. *Id.* ¶ 5. The Agreement required that each opt-in be accompanied by a TrustedForm certificate to "provide independent proof of consent of the opt-in by the consumer[.]" *Id.* ¶ 6. Direct Energy paid TMC

2

$0.45 for each such opt-in consent. *Id.* ¶ 15. TMC was required to "preserve all records documents, data, and recordings for its marketing calls selling Direct Energy services." *Id.* ¶¶ 6–7.

Relevant here, Direct Energy authorized TMC to conduct a limited RVM campaign, "but only [to] leads that had provided their prior express written consent to receive Direct Energy marketing messages." *Id.* ¶ 11. Direct Energy never wavered from that opt-in consent requirement. *See id.* ¶¶ 12-20. And over the seven-month period of the RVM campaign in 2017, Direct Energy paid TMC $527,133.60 for opt-in consents backed by TrustedForm certificates. *Id.* ¶ 21.

Mr. Dickson filed this lawsuit alleging that he received an RVM on his cellular phone about Direct Energy but denying that he consented to be contacted. *Id.* ¶ 22. Direct Energy requested that TMC provide proof of Mr. Dickson's consent. *Id.* ¶ 23. In response, TMC sent it an Excel spreadsheet of data and a website screenshot that TMC represented was evidence of Mr. Dickson's opt-in consent. *Id.* ¶ 24. But Direct Energy later learned that TMC employees manufactured the "Dickson opt-in" and falsely represented to Direct Energy that it was legitimate. *Id.*

Direct Energy also learned that TMC "failed to obtain TrustedForm certificates for some leads; and that for those TrustedForm certificates TMC did obtain, it later defaulted on the requisite payments to Active Prospect," to store them. *Id.* ¶ 25. TMC also misrepresented that it had stopped sending RVMs to Direct Energy leads in late 2017 when in fact, "TMC continued to send RVMs to Direct Energy leads in 2018 without Direct Energy's knowledge or authorization." *Id.* ¶ 26.

### III. Procedural History

After discovering TMC's false representations and breaches of the Agreement, Direct Energy filed its Amended Crossclaim, bringing crossclaims for breach of contract, fraud, and indemnification. Dkt. 106. Having appeared in the case, TMC was served with those crossclaims on May 7, 2020. *See id.* To date, TMC has failed to answer them as required.

3

On May 22, 2024, Direct Energy filed a Motion for Summary Judgment arguing that it could not be vicariously liable for TMC's alleged violations of the TCPA as a matter of law. *See* Doc. 168. The Court granted Direct Energy's motion on December 16, 2025 and held that "no agency relationship exist[ed]" between Direct Energy and TMC. Doc. 185 at 7. The Court also noted TMC's non-participation and ordered that "default is hereby entered against" TMC "with respect to all claims that remain pending against" it. *Id.* Direct Energy now moves for default judgment against TMC on its crossclaims for fraud, breach of contract, and indemnification based on its well-pleaded allegations and the accompanying exhibits showing that Direct Energy is entitled to the $527,133.60 it paid TMC for compliant opt-in leads and $2,416,495.53 for its attorneys' fees and costs in defending this action, together with pre- and post- judgment interest.

### IV.  LEGAL STANDARD

Rule 55 authorizes entry of default when a defendant fails to plead or otherwise defend. Fed. R. Civ. P. 55(a). "Once the default has been entered, the well-pleaded facts of the complaint relating to liability must be accepted as true." *Cincinnati Ins. Co. v. Dorsey Const. Co., Inc.*, No. 1:09-CV-00003, 2010 WL 518171, at *3 (S.D. Ohio Feb. 2, 2010). "Even though the well-pleaded factual allegations of the complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts are sufficient to state a claim for relief[.]" *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016).

"Rule 55(b)(2) 'allows but does not require the district court to conduct an evidentiary hearing' regarding damages." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2025 WL 1104851, at *4 (citation omitted). "An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it," and the Court "may rely on affidavits submitted on the issue of damages" to do so. *Id.* (citations omitted). That is the case here.

4

## V. ARGUMENT

The Court should enter default judgment against TMC on Direct Energy's crossclaims for fraud, breach of contract, and indemnification.

### A. The Court should enter default judgment against TMC for fraud.

The allegations in the Amended Crossclaim show that TMC is liable for fraud, and the attached documents show that Direct Energy is entitled to $527,133.60 in actual damages for the TrustedForm-backed opt-ins that it paid for that TMC failed to maintain and the $2,416,495.53 in fees and costs Direct Energy would not have to had to incur if not for TMC's fraud.

The elements of common-law fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 406 (5th Cir. 2007) (citing *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001)).[1] Each element is satisfied here.

TMC made material misrepresentations about its compliance with consent recordkeeping, and use of RVMs under the Agreement. TMC represented that it was obtaining opt-in consents and retaining records of those consents including TrustedForm certificates. *See* Crossclaim ¶¶ 51–52. TMC knew these representations were false because it had defaulted on payments to ActiveProspect to maintain those records and, as a result, the TrustedForm certificates would not be preserved. *See id.* ¶¶ 53–54. TMC intended for Direct Energy to act in reliance on these false

---

[1] The Agreement provides that the parties' relationship is governed by Texas law. Ex. 1-A, Agreement ¶ 13.6.

representations. TMC did not notify Direct Energy that it had failed to pay to maintain the TrustedForm certificates and instead continued to represent that it was obtaining and maintaining proof of opt-in consent. *See id.* ¶¶ 55–56. TMC also misrepresented that it had valid proof of Mr. Dickson's opt-in to induce further business from Direct Energy. *See id.* ¶¶ 32–36, 46–60. TMC also continued to send RVMs in 2018 after representing to Direct Energy in 2017 that it was complying with Direct Energy's explicit instruction to stop. *See id.* ¶¶ 60–66. Direct Energy relied on these misrepresentations by continuing to do business with TMC. *See id.* ¶¶ 57–59, 65–66.

Direct Energy suffered damages as a direct and proximate result of TMC's fraud. Direct Energy is entitled to $527,133.60 in actual damages because TMC's opt-in proof cannot be verified by TrustedForm certificates Direct Energy paid for. *See* Crossclaim ¶ 76; Ex. 1, Moran Decl. ¶ 12; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) ("The out-of-pocket measure computes the difference between the value paid and the value received[.]"). Direct Energy has also incurred $2,416,495.53 in attorneys' fees and costs defending against Mr. Dickson's claims that it would not have incurred but for TMC's fraud. Crossclaim ¶ 78; Ex. 2, Matthews Decl. ¶¶ 17–18. These consequential damages are "directly traceable" to the fraud. *See Formosa*, 960 S.W.2d at 49 n.1 (holding that "consequential damages that are foreseeable and directly traceable to the fraud and result from it might be recoverable"). Direct Energy thus requests that the Court enter default judgment and award it $2,943,629.13.

Direct Energy also requests the Court order post-judgment interest under 28 U.S.C. § 1961 and pre-judgment interest in its equitable discretion. *Bierscheid v. JPMorgan Chase Bank*, 606 S.W.3d 493, 544 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) ("[T]he decision to award such interest is within the trial court's discretion[.]"). Direct Energy is entitled to pre-judgment interest on actual damages and attorneys' fees at a rate of 7% from the date the Crossclaim was

filed until judgment for a total of $1,122,854.78 (assuming judgment was entered as of today). Tex. Fin. Code § 304.104; *Alma Investments, Inc. v. Bahia Mar Co-Owners Ass'n, Inc.*, 497 S.W.3d 137, 146 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied) ("[P]rejudgment interest is recoverable on attorneys' fees that have been paid prior to the entry of judgment.").

**B.     The Court should enter default judgment against TMC for breach of contract.**

Direct Energy is also entitled to default judgment and damages for its breach of contract claim. The elements of breach of contract under Texas law are: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted).

As to liability, first, TMC and Direct Energy entered into a valid, enforceable Agreement governing telemarketing services and compliance/recordkeeping obligations. Crossclaim ¶¶ 3–7, 80; Ex. 1-A, Agreement. Second, Direct Energy performed and/or tendered performance, including paying TMC in excess of $527,133.60 for valid opt-in leads backed by TrustedForm Certificates during the RVM campaign. Crossclaim ¶¶ 21, 52, 81. Third, TMC breached by failing to procure and maintain TrustedForm certificates including a consent record for Mr. Dickson. *Id.* ¶¶ 26, 32, 35–36, 49, 53–56, 82–83.

As to damages, TMC's breaches caused Direct Energy injury, including payments exceeding $527,133.60 for opt-ins that can no longer be verified by the TrustedForm Certificates TMC was required to be maintain under the Agreement. *Id.* ¶¶ 66, 84–86. In other words, Direct Energy received no value for the $527,133.60 it paid TMC, and it is entitled to that amount as the benefit of the bargain. *See MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 106 (Tex. 2023) ("The general rule for measuring benefit of the bargain damages is to calculate the difference between what was promised and what was received."). Direct Energy is

7

also entitled to its reasonable attorneys' fees and costs for breach of contract in the amount of $2,416,495.53. *See* Matthews Decl. ¶¶ 3–20; Tex. Civ. Prac. & Rem. Code § 38.001(b); *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009).

Thus, Direct Energy respectfully requests that the Court enter default judgment against TMC for breach of contract and award Direct Energy $2,943,629.13 in actual damages, fees, and costs. Direct Energy also requests the Court order post-judgment interest under 28 U.S.C. § 1961 and pre-judgment interest of $1,122,854.78 in its equitable discretion. *See Bierscheid*, 606 S.W.3d at 544.

C.  **The Court should enter default judgment against TMC for indemnification.**

Direct Energy is also entitled to default judgment and damages for indemnification. The elements are: (1) a contractual indemnity agreement exists; (2) the agreement obligates one party to indemnify the other for particular claims; (3) those claims were made; (4) all conditions precedent for recovery had occurred, been performed, waived, or excused; and (5) the party seeking relief has been damaged. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995) (citation omitted).

Here, TMC has a contractual duty in the Agreement to indemnify Direct Energy against allegations like those in this suit and any resulting fees and costs. *See* Crossclaim ¶ 88. The Agreement provides that TMC "shall indemnify . . . Direct Energy . . . from and against any claims causes of action, suits, judgments, fines, losses, damages and liabilities of any kind . . . including, without limitation, all reasonable expenses of litigation, costs of court . . ., reasonable attorneys' fees and expenses (including costs of investigation and expert witness fees)[.]" Agreement ¶ 9.4.1. Mr. Dickson brought such claims against Direct Energy, triggering TMC's contractual indemnity obligations. Dkt. No. 1, Original Complaint; Crossclaim ¶¶ 22, 88–90. Direct Energy has fully

8

performed under the Agreement and demanded reimbursement from TMC for its actual damages, fees, and costs. *See* Crossclaim ¶ 86, 88–89. While the Court correctly held that Direct Energy is not liable to Plaintiff as a matter of law, *see* Order, Doc. 185, Direct Energy is still entitled to its attorneys' fees and costs incurred defending this lawsuit. *Tubb v. Bartlett*, 862 S.W.2d 740, 751 (Tex. App.—El Paso 1993, writ denied) ("Under Texas law, an indemnitee may recover litigation costs incurred while enforcing an indemnity agreement even though such costs are not specifically covered by the agreement."). Thus, Direct Energy seeks indemnity for the $2,416,495.53 in fees and costs it was forced to incur to defend this suit. *See* Matthews Decl. ¶¶ 3–20.

## VI. Conclusion

For these reasons, Direct Energy respectfully requests that the Court enter default judgment under Federal Rule of Civil Procedure 55(b)(2), conclude that Direct Energy has shown that it has valid claims for fraud, breach of contract, and indemnification under the well-pleaded allegations in the Amended Crossclaim, and award Direct Energy $527,133.60 in actual damages, $2,416,495.53 in fees and costs, and $1,122,854.78 in pre-judgment interest for a total award of $4,066,483.91, plus post-judgment interest under 28 U.S.C. § 1961, and all other relief as the Court deems just and proper.

DATE: December 30, 2025

McDowell Hetherington LLP

By: *Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.*
Texas Bar No. 24051009
Diane S. Wizig*
Texas Bar No. 24106594
William B. Thomas*
Texas Bar No. 24083965
David L. Villarreal*
Texas Bar No. 24095434
1001 Fannin Street, Suite 2400
Houston, Texas 77002
T: (713) 337-5580

9

        F: (713) 337-8850
        matt.matthews@mhllp.com
        diane.wizig@mhllp.com
        william.thomas@mhllp.com
        david.villarreal@mhllp.com

*Admitted Pro Hac Vice*

Frank S. Carson (0089575)
FROST BROWN TODD LLC
10 W. Broad Street, Suite 2300
Columbus, Ohio 43215
T: (614) 559-7227
F: (614) 464-1737
fcarson@fbtlaw.com

***Counsel for Direct Energy, LP***

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on all counsel of record on the 30th day of December 2025.

        */s/ David L. Villarreal*
        David L. Villarreal